IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**GEORGE A. McCROAN, JR.,**

  Plaintiff,

v.                                    CASE NO. 3:14-cv-00067-RS-CJK

**UNITED PARCEL SERVICE, INC.,**

  Defendant.
_____/

# ORDER

Before are Defendant's Motion for Summary Judgment (Doc. 36), Defendant's Statement of Material Facts as to Which It Contends There is No Genuine Issue to Be Tried (Doc. 37), Defendant's Memorandum of Law in Support (Doc. 38), Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 46), Plaintiff's Statement of Disputed Material Facts in Opposition to Summary Judgment (Doc. 47), and Defendant's Reply Brief in Support of Motion for Summary Judgment (Doc. 51).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 , 91 L.

Ed. 2d 202 (1986).  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment.  *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff.  *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008).  All reasonable doubts about the facts shall be resolved in favor of the non-movant.  *Id.*

Plaintiff George McCroan, age 51, began his employment with Defendant United Parcel Service, Inc. ("UPS") in 1985. (Doc. 46 at 13). He was promoted to

the position of senior sales account executive, where he worked from 1996 until his termination. (*Id.*).

In January 2011, Area Sales Manager Dickie Sims, age 50 (Doc. 37 at 21), became McCroan's immediate supervisor. (Doc. 46 at 13). On several occasions, Sims referred to McCroan as the "Old Man." (*Id.*). He also ordered McCroan to assist less senior sales executives with difficult accounts, without any credit or promotion. Some of these accounts were assigned to younger executives. (*Id.* at 14).

McCroan complained about Dickie's conduct and alleged age discrimination on a UPS 1-800 line established for this purpose. (*Id.*). After calling the line, McCroan noticed that several UPS departments such as IT and finance stopped giving him support. (*Id.*). Additionally, when McCroan applied to a position in a larger market in May 2011, he was told that the position had already been promised to a younger and less experienced sales associate (*Id.* at 15). McCroan also heard through a third party that Sims's supervisor preferred "young blonde bombshells" for sales executive positions. (*Id.*).

McCroan was told to attend a meeting in Birmingham, Alabama, on February 1, 2012. (*Id.* at 16). On his way to the meeting from his workplace in Pensacola, Florida, he slipped and fell, and was injured. (*Id.* at 17). The meeting was rescheduled to a week later in Pensacola. (*Id.*). Plaintiff was questioned at the

meeting about his fall the previous week, and also about several expense reports that he had submitted for work-related reimbursement, mostly due to travel. (*Id.* at 17-18). Plaintiff was told to answer additional questions, but the meeting never properly reconvened. (*Id.* at 18-19). On February 10, 2012, Sims called McCroan and informed him that he was being separated from employment with UPS. (*Id.* at 19).

McCroan was provided with information regarding UPS's non-binding Employee Dispute Resolution ("EDR") program. (*Id.* at 19; Doc. 36-6 at 55). McCroan sought reinstatement and other relief through the program. (Doc. 36-6 at 85). After a hearing on June 21, 2012, the panel sent notice to McCroan on June 25, 2012, that they did not find in his favor. (Doc. 46 at 20).

On January 7, 2013, McCroan filed a workers' compensation claim against UPS for the fall he suffered on February 1, 2012. (*Id.*). On January 24, 2013, McCroan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), alleging age and sex discrimination. (*Id.*).

The worker's compensation claim was denied by the Florida Office of the Judges of Compensation Claims on June 7th, 2013. (Doc. 36-4 at 59). In denying benefits, the judge found that McCroan's

"loss of earnings resulted solely and directly from his termination as a result of Claimant having knowingly and intentionally utilizing his corporate expense account for personal gain with a willful and wanton disregard of standards of behavior the Employer had the right to expect of him and with a total disregard as to the interests of his Employer."

(*Id.* at 58-59). The judge further found that charging certain personal expenses to UPS was "not only improper, but was an act of dishonesty which was quasi-criminal in nature." (*Id.* at 57).

In April 2013, McCroan began contract work with a former UPS client of his, A Beka Book, Inc., to provide consulting regarding transportation services. (Doc. 46 at 20). Three months later, A Beka Book terminated McCroan's contract. (*Id.* at 21). The UPS employee that serviced A Beka Book's account discussed McCroan's lawsuit against UPS, showed A Beka Book the opinion denying McCroan's workers compensation claim, and threatened to raise their rates if they continued to retain McCroan. (*Id.*).

On October 11, 2013, McCroan filed a second charge of discrimination with the EEOC and FCHR, alleging retaliation for his termination from A Beka Book. (*Id.*).

In November 2013, McCroan sought employment with another former client, Priester's Pecans. (*Id.* at 22). Once again, his contract was terminated after UPS informed them of McCroan's position as a "disgruntled employee" and threatened to terminate their contract. (*Id.*).

The EEOC issued a right-to-sue notice regarding McCroan's January 2013 charge of discrimination on November 13, 2013. (*Id.* at 21). Plaintiff initiated this lawsuit on February 12, 2014. On May 14, 2014, the EEOC issued a right to sue notice regarding McCroan's October 2013 charge of retaliation. (*Id.* at 22).

UPS now moves for summary judgment. McCroan has abandoned all claims other than a retaliation action pursuant to 42 U.S.C. § 2000e and Fla. Stat. Ch. 760. (Doc. 45 at fn. 1).

### III. ANALYSIS

I first address McCroan's federal law claims.

#### *a. Initial Matters*

##### *1. Total Waiver of Claims*

McCroan has stated that he is "not pursuing claims of age discrimination or workers' compensation retaliation." (Doc. 45 at fn. 1). That appears to mean that he is no longer pursuing Counts I and II of his First Amended Complaint and is now only pursuing Count III, "Retaliation," under 42 U.S.C. § 2000e. (*See also* Doc. 45 at 2, 8 (citing 42 USC 2000e)).

I note as an initial matter that it would be well within my discretion to dismiss McCroan's claims without discussion based on these concessions. McCroan appears to have, by his own admission, abandoned any claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. He has

wholly failed to state any claim or produce any evidence of discrimination under 42 U.S.C. § 2000e, which does not prohibit age discrimination at all. *See* 42 U.S.C. § 2000e-2 (prohibiting discrimination "because of such individual's race, color, religion, sex, or national origin."). Although McCroan had originally fashioned his complaint as one of gender discrimination, which would fall under 42 U.S.C. § 2000e, McCroan abandoned that claim when he filed his original complaint, and the claims of retaliation still at issue seem to stem entirely from age discrimination. (*See* Doc. 46 at 14 ("After complaining about Sims discriminating against Plaintiff because of his age. . .")).

I will, however, out of an abundance of caution, construe his Response and Memorandum (Doc. 45) to mean that he is still pursuing claims under the ADEA, 29 U.S.C. § 623(a)(1), based on UPS's purported retaliation against his protected activity. He seems to allege that UPS first retaliated against his protected activity of calling the 1-800 line to report discrimination by limiting essential services, passing him over for promotions, and terminating him; and the UPS continued to retaliate against him for this and also for his protected activity of filing an EEOC complaint by contacting his subsequent employers and persuading them to fire him. (Doc. 45 at 9).

UPS argues that McCroan's extension of their "retaliation" claim in their Response is beyond the scope of McCroan's own description of his claims. (Doc.

51 at 3). While this argument is not without merit, UPS has had ample opportunity to respond to all of McCroan's allegations, regardless of whether they are labeled discrimination or retaliation, or under which statutory provision McCroan's counsel has attempted to bring them. I will therefore proceed to address all of McCroan's complaints under the label of retaliation, as it seems—despite his own counsel's best efforts to convince me to the contrary—that McCroan did not intend to abandon any portion of his claims alleging retaliation against protected activity, whether before or after his termination.

## 2. Time Barred Claims

I next find that claims involving a substantial portion of the retaliatory conduct that McCroan alleges are time-barred.

In order to bring a claim under the ADEA, a plaintiff must first file a charge with the EEOC. 29 U.S.C. § 626(d). In a state such as Florida, this charge must be filed within 300 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d)(1)(B); *see also Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) ("For a charge to be timely in Florida, a deferral state, it must be filed not more than 300 days after the alleged unlawful employment practice occurred."). This statute of limitations applies begins to run as to discrete actions—events such as insufficient support, denying a promotion, and termination—from the day those events occur. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S. Ct.

2061, 2077, 153 L. Ed. 2d 106 (2002). The events that constitute retaliation that McCroan alleges are discrete events, not continuing events. *See id.*; *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271-72 (11th Cir. 2002).

McCroan filed his first charge of discrimination with the EEOC on January 24, 2013. Therefore, recovery is precluded for any alleged retaliatory activity that occurred prior to March 30, 2012. This includes all of McCroan's allegations up to and including his termination from UPS.

Contrary to McCroan's assertions, the record is uncontroverted that he was terminated from UPS on February 10, 2012. (*See* Doc. 36-10 at 6; Doc. 36-2 at 31 (McCroan stating that he was told he was "separated" on that date); *Id.* at 30 ("Q: After February 10, 2012, did you any additional work for UPS? A: No.")). The subsequent EDR process, which did occur within the 300-day time period, was instead a non-binding procedure that was an attempt by McCroan to get reinstated to the job that he had already lost. (*See* Doc. 36-6 at 55; Doc. 36-2 at 31 ("there would be a good chance that it would be worked out, and . . . I have a good chance of getting my job back.").

The only retaliatory conduct that McCroan is possibly able to allege, therefore, is (1) the non-binding decision of the EDR panel not to reinstate him and (2) the contact with his two subsequent employers.

### 3. The Second Right-to-Sue Notice

McCroan did not obtain the right-to-sue notice for his October 2013 EEOC Charge, which alleged retaliation against him for filing the first EEOC Charge in January 2013 through contacting his subsequent employers, until May 14, 2014— three months after he filed his complaint in this court. (Doc. 46 at 22).

### i. Production for the first time in response to summary judgment

UPS first complains that this document should not be considered because McCroan never amended his complaint to reflect this notice, and apparently failed to produce the document during discovery despite targeted discovery requests, and instead first disclosed it as an unauthenticated attachment to his Response in Opposition to Defendant's Motion for Summary Judgment.

Two of these contentions have no merit. McCroan's failure to amend the complaint to include the document does not seem problematic. Indeed, the January 2014 Charge does not appear to be included or mentioned in the complaint either, and Defendant raises no objections to this, nor do they cite any authority for the proposition that the letter must be included in the complaint. The allegation that this document was not produced during discovery is more serious, as the document may become inadmissible under Fed. R. Civ. P. 37(c)(1). However, because the only evidence of this failure to produce the document comes without citation in a footnote in UPS's reply brief (Doc. 51, fn. 1), I do not have enough evidence to

strike the document at this point in the litigation. UPS has not made any motions or requested any sanctions pursuant to Fed. R. Civ. P. 37(c)(1).

UPS's third contention—that the document was never authenticated—does have some support. On motions for summary judgment, courts may consider only that evidence which can be reduced to an admissible form. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). Generally, the documents must be authenticated to be considered at the summary judgment stage. *See Saunders v. Emory Healthcare, Inc.,* 360 F. App'x 110, 113 (11th Cir. 2010) (citing Charles Alan Wright et al., 10A Fed. Prac. & Proc. Civ. § 2722 (3d ed.)). However, I need not decide whether the document may be considered for summary judgment despite its apparent lack of authenticity. McCroan stated that he believed that he had received a right to sue letter. (Doc. 38, fn. 19). As I take the facts in the light most favorable to the plaintiff, I will proceed with my analysis as though he did receive a right-to-sue letter on May 14, 2014 (or at least on some date after he filed the complaint; the actual date and specific contents of the letter are of little relevance to my determinations). Furthermore, any error as a result of McCroan's failure to authenticate this document appears harmless, as UPS addressed the merits of the claims stemming from the October 2014 Charge in its Motion for Summary Judgment (Doc. 38) and also had additional opportunity to respond to them in its Reply Brief (Doc. 51).

### *ii. Failure to exhaust administrative remedies*

McCroan obtained his second right-to-sue notice in May 2014, three months after he filed this suit. However, I find this not to be problematic, as the claim logically grows out of his first claim for retaliation. The district court has jurisdiction to hear a claim where it grows out of an administrative charge properly before the court. *Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). Furthermore, a right-to-sue letter is not a jurisdictional prerequisite to suit in district court, but is a condition precedent subject to equitable modification. *Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996).

Here, McCroan filed suit properly after receiving the right regarding his January 2013 charge, and subsequently received a right-to-sue notice regarding his May 2013 Charge. He appears to have informed UPS of this notice (although they do allege that he failed to produce it), and any event this case has been sufficiently briefed as though UPS did have the notice that failure to specifically inform anyone about it does not appear to be prejudicial. It seems appropriate in this case to find that suit regarding the contents of the October 2013 charge is valid, either under the *Gupta* rule or by equitable modification. This is especially appropriate given that the two charges relate to the same basic charge of retaliation for reporting age discrimination to UPS. *See Baker v. Buckeye Cellulose Corp.*, 856

F.2d 167, 169 (11th Cir. 1988) ("Because a claim of retaliation could reasonably be expected to grow out of the original charge of discrimination, the district court had jurisdiction over the motion.").

UPS has failed to show that McCroan's largely harmless conduct in failing to properly notify them of the right to sue, especially given the existing factual uncertainties regarding their allegations, is grounds for dismissing McCroan's post-termination retaliation claims for a procedural technicality. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61 (5th Cir. 1970) ( "[C]ourts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act."); *Collins v. Compass Grp., Inc.*, 965 F. Supp. 2d 1321, 1331 (N.D. Ala. 2013) (citing *Sanchez* in an ADEA context).

*4. The Worker's Compensation Decision*

The Florida Office of the Judges of Compensation Claims, after a formal hearing, denied McCroan's workers compensation claims on June 7th, 2013. (Doc. 36-4 at 59). The court found that McCroan was fired because he submitted improper reimbursements to UPS. (*Id.* at 58-59 (finding that McCroan's termination was a "result of Claimant having knowingly and intentionally utilized his corporate expense account for personal gain.").

Collateral estoppel prevents identical parties from relitigating issues that have previously been decided; the parties and issues must be identical, and the

matter must be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction. *Mobil Oil Corp. v. Shevin*, 354 So. 2d 372, 374 (Fla. 1977). *See also City of Tampa v. Lewis*, 488 So. 2d 860, 862 (Fla. Dist. Ct. App. 1986) ("[A]lthough orders of the deputy commissioner in worker's compensation proceedings are quasi-judicial acts, they are governed by the same rules regarding collateral estoppel as are applicable to the judgments or decrees of courts.").

McCroan entirely failed to address the worker's compensation proceeding or the issue of collateral estoppel in his Memorandum of Law. I therefore find it to be undisputed that UPS fired McCroan for engaging in fraudulent and improper reimbursement practices. McCroan had the opportunity to fully litigate the issue of why he was fired when he requested worker's compensation, and a competent court rendered a final decision against him on the matter.

### b. The Merits

After addressing these initial matters, it appears that McCroan is alleging a valid, non-time-barred claim for three retaliatory actions—failing to reinstate him at the EDR hearing in retaliation for his phone calls to the 1-800 hotline, contacting A Beka Books and forcing his termination there in retaliation for filing his January 2013 EEOC Charge, and contacting Priester's Pecans and forcing his termination there for the same reasons. These claims must be assessed in light of the

undisputed fact that McCroan was fired from UPS for improper and fraudulent use of his expense account.

In order to state a prima facie claim for ADEA retaliation, a plaintiff must show (1) he engaged in ADEA protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. *Stone v. Geico Gen. Ins. Co.*, 279 F. App'x 821, 822 (11th Cir. 2008). Furthermore, even if a prima facie case is established, a defendant may proffer legitimate reasons for its employment decision, and plaintiff then bears the ultimate burden of proving them to be a pretext for discrimination. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

Upon consideration of the evidence, I find that there is no genuine dispute of material fact, and that all of McCroan's claims for retaliation fail as a matter of law.

*1. The EDR Hearing*

The only non-time-barred retaliatory activity that McCroan alleges UPS engaged in related to his January 2013 EEOC Charge is the decision of the EDR panel not to reinstate him. This allegedly stems from retaliation to his phone call to the 1-800 hotline.

First, McCroan has not made a prima facie case for retaliation. In order to make a prima facie case, McCroan must have suffered an adverse employment

action. Such an action must impact the "terms, conditions, or privileges" of the employment in a real and demonstrable way. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). The employee "employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id*. Because McCroan had already been terminated in February 2012, there was no change whatsoever in the terms, conditions, or privileges of employment (or lack thereof) when the EDR panel made the non-binding decision not to reinstate him. *See Everson v. Coca-Cola Co.*, 241 F. App'x 652, 653 (11th Cir. 2007) (failure to reinstate benefits did not constitute an adverse employment action).

 Second, even if McCroan could demonstrate a prima facie case, he cannot prove that UPS's motivations not to reinstate him were pretextual. In order to show that an employer's decision to terminate was pretextual, the plaintiff's evidence must cast enough doubt to allow a reasonable factfinder to determine that defendant's proffered legitimate reasons were not what actually motivated its conduct. *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (citations omitted). The plaintiff must demonstrate such weaknesses and implausibilities in the employer's preferred reasons that a reasonable factfinder could find them unworthy of credence. *Id* (citations omitted).

However, McCroan has failed to present any evidence to contradict UPS's claim that he was fired for the indisputably legitimate reason of committing fraud on the company (and is indeed estopped from doing so).

Rather, McCroan only submits a few pieces of evidence that UPS retaliated against him based on his protected activity of reporting age discrimination on the 1-800 hotline. He contends that UPS requested more work from him, failed to provide him with sufficient services, that they passed him over for promotion in favor of a younger executive, that they inquired into his expense reports, and that they fired him (for improperly submitting these reports).

Even taken in the light most favorable to him, this evidence could not persuade any reasonable jury to believe that the retaliatory conduct at issue— failing to reinstate him after he was fired *for fraud that he indisputably committed on upon the company*—was merely a pretext to retaliate against him for making an age discrimination complaint to the company's 1-800 hotline.

### 2. Post-termination Retaliation

For similar reasons, McCroan's claims that UPS retaliated against him for making the January 2013 EEOC Charge by contacting and threatening his subsequent employers fail as a matter of law.

First, McCroan has failed to establish a prima facie case because he has failed to demonstrate a causal connection between filing the charge and UPS

contacting his employers. To demonstrate a causal connection, a plaintiff must generally establish that the defendant was actually aware of the protected expression when it took the adverse employment action. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). For corporate defendants, this means that the corporate agent who took the action was actually aware of the protected expression. *Id.*

McCroan appears to have produced no evidence that the UPS account managers who contacted his subsequent employers were aware that he filed a charge with the EEOC, and he failed to address UPS's argument to this effect in his Memorandum of Law. And even if his retaliation claims could be construed to be extensions of his original charge of protected activity for calling the 1-800 hotline, McCroan likewise did not produce any evidence that the UPS employees were aware of his call. Thus there appears to be no causal connection between UPS's contact with his employers and the January EEOC charge.

Second, McCroan once again cannot prove that UPS's reasons for contacting his employers were pretextual. UPS has offered a valid business reason for the contact—that it as a rule preferred to negotiate directly with customers rather than through a third party (McCroan's new employment position), and that it informed them of McCroan's undisputed dishonest acts in the course of encouraging the customer to resume direct negotiations. McCroan has failed to proffer sufficient

evidence to cast enough doubt that a reasonable jury could determine that UPS's mention of the dishonest acts that McCroan indisputably committed was merely a pretext to retaliate against him for his ongoing discrimination claims (of which, as previously mentioned, the UPS employees were apparently not even aware). McCroan appears to attempt to address this contention in his Memorandum of Law (Doc. 45 at 14), but his arguments merely deflect the issue back to his previous claims of retaliatory acts without addressing the legitimacy of UPS's proferred business reasons for his termination.

## IV. CONCLUSION

Upon review of the parties' filings, I find that many of McCroan's claims are time-barred, and those that are not fail as a matter of law. Even when taking all disputed facts in the light most favorable to the plaintiff, no reasonable finder of fact could find that UPS retaliated against him for engaging in protected activity.

Therefore, the relief requested in Defendant's Motion for Summary Judgment (Doc. 36) is **GRANTED.** Plaintiff's federal law claims are **DISMISSED WITH PREJUDICE.** Because the federal question claims are dismissed, I decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state law claims, which are **DISMISSED WITHOUT PREJUDICE** subject to being refiled in state court. The Clerk is directed to close the case.

**ORDERED** on September 29, 2014.

                                    **/s/ Richard Smoak**
                                    **RICHARD SMOAK**
                                    **UNITED STATES DISTRICT JUDGE**